UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

**United States of America,**

    Plaintiff,

v.

**James Daniel Jaschke,**

    Defendant.

Criminal No. 10-174 (JRT/JJG)

**REPORT
AND
RECOMMENDATION**

JEANNE J. GRAHAM, United States Magistrate Judge

This prosecution came before the undersigned on August 9, 2010 for resolution of pretrial motions. Leshia M. Lee-Dixon, Assistant United States Attorney, appeared for the Government. Andrea K. George, Assistant Federal Defender, appeared on behalf of defendant James Jaschke. The dispositive motions in this matter are referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(a).

By a motion to suppress evidence obtained through search and seizure (Doc. No. 19), Mr. Jaschke (Jaschke) seeks to suppress evidence acquired through the execution of a search warrant, asserting the warrant was not supported by probable cause. In a motion to suppress statements (Doc. No. 20), Mr. Jaschke asks for suppression of certain statements he made to law enforcement. He contends that, during an interview, officers did not honor his invocation of his right to counsel or his right to remain silent, violating his privilege against self-incrimination. Though Mr. Jaschke also moved to suppress identifications (Doc. No. 18), he has not offered evidence or argument to support this motion, which may be deemed withdrawn.

**A.     Search Warrant**

Jaschke provided day care at his residence for two children during the summer of 2009. At some point, Jaschke recorded one of those children performing a sexual act, and he played the recording for the child's parents on the evening of September 22, 2009. They took the recording and turned it over to an investigator from the Morrison County Sheriff's Office.

The parents informed the investigator that the video was recorded in one of the bedrooms at Jaschke's residence. A social worker subsequently interviewed the child, who explained how Jaschke prompted the video. Based on these findings, the investigator applied for a search warrant for Jaschke's residence. In the affidavit, the investigator added that in his experience, Jaschke's conduct was consistent with the production and distribution of child pornography. The search warrant issued, and when officers subsequently searched Jaschke's residence, they discovered more incriminating evidence.

Jaschke has asserted a "four corners" argument against the warrant, challenging whether it was founded on probable cause. This argument is derived from the Fourth Amendment, which requires search warrants to be based on a determination of probable cause by a neutral magistrate. *Warden v. Hayden*, 387 U.S. 294, 301-02 (1967). Probable cause is satisfied where a reasonable person would find a fair probability of incriminating evidence on the premises. *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Upon evidence that the accused produced and possessed child pornography, there is more than a fair probably such contraband can be found in the accused's residence. These circumstances, therefore, are sufficient to establish probable cause for a warrant to search the premises. *United States v. Terry*, 305 F.3d 818, 823 (8th Cir. 2002). This Court concludes that, because the search warrant here is supported by probable cause, evidence from the search should not be suppressed.

B.  **Statements**

The day after the search warrant was executed, the Morrison County Sheriff's Office took Jaschke into custody. Shortly thereafter, he was interviewed in two sessions. The first session began at approximately 11:35 a.m. and continued until 12:50 p.m.; the next commenced around 1:25 p.m. and ended at 2:25 p.m. The parties have not contested that, as provided by his Fifth Amendment privilege against self-incrimination, Jaschke was given proper *Miranda* warnings. Their sole dispute is whether Jaschke invoked his right to counsel or his right to remain silent.

Jaschke contends that he did so, and when the officers continued the interrogation, they violated his privilege against self-incrimination. The Government responds that Jaschke did not invoke either his right to counsel or his right to remain silent, and so there was no violation. The record includes a complete audio recording and transcript from both sessions. In addition to Jaschke, the participants were Sergeant Leslie Dick, of the Morrison County Sheriff's Office; and Jeff Guith, of Morrison County Social Services.

Around an hour into the first session, Jaschke asked Guith for "time to think and maybe clear my head." This led to the following exchange:

| | |
|---|---|
| Dick: | To think about what . . .? |
| Jaschke: | Life. Everything. |
| Dick: | I think the question now from [Guith] is are you willing to sit down right now and . . . explain [what happened]? . . . |
| Jaschke: | I need to—time to clear my head. |
| Dick: | So, if we take a break are we willing to talk again? |
| Jaschke: | Don't you guys [unintelligible] my head is—it's all taken up going so fast. |

3

> Guith: Yeah, you can take a few minutes. That's fine. I think we're finally moving in the right direction and I think you're getting pretty close to being ready with this to move forward. I don't want to rush you or push you in any way.
>
> Jaschke: Well that's—that pretty well rushed and pushed.

They went on to discuss how and where Jaschke could take a break, and after some additional intervening questions, they stopped the interview. Jaschke rested in nearby room for about a half an hour.

When the second session began, Dick reiterated the original *Miranda* warning, and asked Jaschke to verify whether he was still willing to talk. Jaschke agreed and the interview resumed. After some more questioning, the following exchange occurred:

> Jaschke: There's just too many uncertainties . . . [to] make a decision, so should I talk to a lawyer? Ask him what the deal is. How should I do this or how I shouldn't do this or something. 'Cause this—this is too much. . . .
>
> Guith: . . . [A]t this point . . . that's the circumstance that you're in. You can't control what's going to happen from here forward and . . . I understand that sucks to be out of control. I want to be clear at this point, you said maybe you should talk to an attorney.
>
> If you want to discontinue this . . . conversation, if you want to have an attorney right now, that is your right. Just like [Dick] read to you, and we will discontinue this conversation. . . . [I]f you want we can continue this conversation and try to get this resolved and get it dealt with.
>
> I don't want to force you . . . into continuing if you don't want to. But at this point you have to pretty clearly state yeah, I'm okay with continuing this and I want to keep talking with you or no, I'm done talking to you guys. I'm not doing it anymore. It's up to you.

4

| | |
|---|---|
| Jaschke: | Would you let me see a lawyer this afternoon or do I have to go wait three, four days to get one of those too? |
| | . . . . |
| Dick: | You have the opportunity to make contact with an attorney once you get up in the jail again. . . . You can call whoever attorney you want. |
| | . . . . |
| Guith: | And if [you] can't afford a lawyer one will [be] appointed to you and all that, but I can't make any promises that they'll be there this afternoon. |

This conversation continued, without further discussion about the underlying incident, for a few minutes.

Dick then made another effort to clarify whether Jaschke was requesting an attorney:

| | |
|---|---|
| Dick: | . . . So did you want to continue with the conversation with—with [Guith] or did you want to contact an attorney? |
| Jaschke: | I think some stuff I'm going to need an attorney for. |
| Guith: | Is there some stuff— |
| Jaschke: | [interrupting, partially unintelligible] —all of it— |
| Guith: | Is there some stuff that you want to talk to us about now? You know, it's—it is completely up to you. If there's parts of it you want to talk to an attorney first, that's up to you. You know, if there's some stuff that you want to get off your chest now, that's up to you. . . . [T]he ball's in your court. |
| Jaschke: | Yep. But I told you I didn't take any tapes out of anywhere—put any tapes in any machines . . . tell her to go watch the tapes. . . . That's just the way it was. |

5

| | |
|---|---|
| Guith: | Okay. And I'm not saying that I don't believe you. You know, that's not the . . . story that the kid told but that doesn't mean the story that the kid told was 100 percent accurate either. . . . [I]f she took indecent liberties with your videotapes . . . [she] maybe [would] be prone to say, he showed me them. Or he asked me to watch them or whatever because then it kind of gets her off the hook. . . . I don't believe that I have the—the corner of the market of the truth and I don't believe I always know exactly what's going on and looking for your help for it.<br><br>But I—I really have to be clear here 'cause we're on kind of thin ice with this whole attorney, not attorney thing. If—if you want to continue the conversation, you can choose to answer— |
| Jaschke: | [interrupting, unintelligible] —attorney— [unintelligible] . . . He's going to tell me that. |
| Guith: | I know but we have to have some real crystal clarity on whether or not you want to continue or not continue. Get an attorney right now or not get an attorney right now. I can't leave that kind of as an unanswered question. . . . I owe it to you. |
| Jaschke: | Well, you said when you started there were some questions you might not want to answer and you don't have to answer them. Well, that—there you go. |
| Dick: | But once you . . . mention that—that you want to speak to a lawyer, that's when we have to clarify. |
| Guith: | We just have to be real careful, we don't want to tread on your rights . . . . I want to make sure that you're understanding that you have that right to an attorney. And if you want— |
| Jaschke: | . . . [unintelligible] right to not answer questions. |
| Guith: | Yeah. |

6

| | | |
|---|---|---|
| Jaschke: | | But [unintelligible] and that's what I was just trying to tell you. I didn't—that part of—when I gave her movies and stuff to watch . . . . |
| Guith: | | Okay. |
| Jaschke: | | I turned on the machine and my amp and all that other [unintelligible] to make it all work. |
| Guith: | | This is going to be really annoying to you but what we have to answer very clearly is if you want to continue having some conversation and I'll—I'll reiterate your right. You don't have to answer all the questions. You can pick and choose but— |
| Jaschke: | | [unintelligible] then we can continue, but there are questions I will not answer. I—I'm not gonna, you know. |
| Dick: | | Okay. So at this point you're waiving on your right to an attorney. That's what the question is? |
| Jaschke: | | Yes. |
| Dick: | | Okay. So you're willing to— |
| Jaschke: | | I'm retaining my right not to answer all questions. |
| Guith: | | That—that's fine. |
| Jaschke: | | Then we're fine. |
| Guith: | | . . . [A]t this point you're waiving your right to your attorney and you're going to selectively answer some questions. Is that accurate? |
| Jaschke: | | Yes. |

The interview then resumed in earnest.

Near the end of the interview, Guith asked Jaschke whether he was willing to submit to a polygraph test. Jaschke responded that he would not consider this until he talked to an attorney. This conversation followed:

7

| | |
|---|---|
| Jaschke: | That's something you definitely want, you know, have some kind of legal counseling at. I should have legal counsel the whole time during the questioning too. I might have [said] something that's going to get me into trouble. |
| Dick: | . . . [A]t this point, you're talking about a lawyer again. Are you wanting to continue with this or are requesting you want to talk to an attorney? . . . . We have to be explicit here. |
| Jaschke: | I don't want a lawyer. |
| Guith: | So you're [waiving] your right to an attorney? |
| | . . . . |
| Jaschke: | Well, until I'm formally charged, yeah. . . . |

Turning to the analysis, the question here is whether Jaschke invoked either his right to counsel or his right to remain silent. Although both rights are derived from the privilege against self-incrimination, somewhat different standards govern whether there has been an invocation of each right.

For the right to remain silent, a court considers whether the accused has stated a "clear, consistent expression of a desire to remain silent." *United States v. Ferrer-Montoya*, 483 F.3d 565, 569 (8th Cir. 2007). Where the accused is evasive or reluctant to talk to law enforcement, this is not enough to establish that the accused clearly desired to remain silent. *United States v. Demarce*, 564 F.3d 989, 994 (8th Cir. 2009).

For the right to counsel, a court looks at whether the accused made a "clear and unequivocal request for the assistance of counsel." *United States v. Kelly*, 329 F.3d 624, 630 (8th Cir. 2003). The inquiry is undertaken from the perspective of a reasonable officer, not the accused. *Davis v. United States*, 512 U.S. 452, 458-59 (1994). Where the accused mentions counsel during an interview, and officers ask the accused whether he or she wants counsel, ambiguous responses

will not be enough to invoke the right to counsel. *United States v. Cloud*, 594 F.3d 1042, 1046 (8th Cir. 2010). And general questions about the availability of counsel also will not be enough to invoke that right. *See Kelly*, 329 F.3d at 630 (citing cases).

There is no indication here that Jaschke clearly or consistently invoked his right to remain silent. For instance, Jaschke asked for time to "clear his head" during the first session, but he did not say that he was done answering questions. And after a thirty-minute break, Jaschke agreed to resume the interview. Later in the second session, Jaschke said he might refuse to answer some questions, but he did not actually do so.

Nor is there sufficient evidence that Jaschke unequivocally invoked his right to counsel. He mentioned counsel on several occasions, and as the preceding excerpts show, the interviewers made several efforts to clarify whether Jaschke wanted counsel. But Jaschke frequently did not answer, and he sometimes spontaneously renewed his discussion about the underlying incident. And on two separate occasions, before the interviewers resumed substantial questioning, Jaschke expressly waived his right to counsel.

When these circumstances are viewed from the perspective of a reasonable officer, there is no indication that Jaschke clearly and unequivocally invoked his right to counsel. Nor is there evidence that Jaschke clearly or consistently expressed his desire to exercise his right to remain silent. Because Jaschke did not invoke either of these rights, the interrogation did not violate his privilege against self-incrimination. As a result, his statements during the interview need not be suppressed.

**C.  Conclusion**

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. Mr. Jaschke's motion to suppress evidence obtained through search and seizure (Doc. No. 19) be **DENIED.**

2. Mr. Jaschke's motion to suppress statements (Doc. No. 20) be **DENIED.**

3. Mr. Jachke's motion to suppress identifications (Doc. No. 18) be **WITHDRAWN.**

Dated this 31st day of August, 2010.   /s   *Jeanne J. Graham*

JEANNE J. GRAHAM
United States Magistrate Judge

**NOTICE**

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **September 15, 2010.** A party may respond to the objections within fourteen days after service thereof. Any objections or responses filed under this rule shall not exceed 3,500 words. The district court judge shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit. Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.